UNIVERSAL CONSTRUCTION, INC.

PHONE
(208) 365-5750

U.C.I.

FAX
(208) 365-4645

William L. Parsons, Contracting Officer
US Department of Transportation
Federal Highway Administration
Wester Federal Lands, Highway Division
610 E. Fifth Street
Vancouver, WA 98661-3801

November 30, 2001

VIA FACSIMILE: (360) 696-7846
HAND DELIVERY TO JOB SITE

*Re: Camas NWR Complex*
*Contract No. DTFH70-01-C-00034*

Dear Mr. Parsons:

We are writing in response to your letter date-stamped November 23, 2001, in which you state that the government considers Universal Construction, Inc.'s ( "UCI") progress on the Project to be "jeopardizing the timely completion of [the] contract." Several times in your letter you direct UCI to identify how the Project will be completed within the allotted contract time. There is no possibility of completing the Project within the Contract time. This is due, however, to the government's (Federal Highway Administration's ("FHWA")) failure to cooperate and facilitate contract performance. Indeed, the FHWA's onsite representative has prevented, hindered and delayed performance throughout the Project. There is no other way to characterize the FHWA's actions other than as in bad faith. To date, UCI has been on the Project for 82 days and has yet to receive a single penny in compensation for its efforts. UCI has submitted pay requests, which have been flatly denied. As is identified below, this letter constitutes a claim under the contract.

In response to your letter demands, the Project will not be completed within contract completion time. Again, this is due to the FHWA's lack of cooperation on the Project. This is also particularly true in light of the FHWA's letter of November 29, 2001, which has shut the Project down. The Project will not be completed within the contract time for three primary reasons. A differing site condition was encountered with

P.O. Box 187 - Emmett, Idaho 83617

RECEIVED
NOV 30 2001
BY PROJECT ENGINEER

180

respect to the government required borrow source; the FHWA directed UCI's construction means and methodology; and front-end Project delays by the FHWA in "nit picking" submittal data, which, again evidences FHWA's bad faith in administering this contract.

By this correspondence and its prior notice, UCI is asserting that it has encountered a differing site condition with respect to the government mandated borrow source. This claim is supplemented by prior correspondence by and between FHWA and UCI. The information from which you based your denial that UCI encountered a differing site condition is incorrect. Interestingly, there was no geo-technical data concerning the mandated borrow source. UCI was advised that the visible soil was indicative of the entire source. Not true. UCI has documented five differing soils conditions in the government required borrow source. This will be supplemented with expert reports in order to proceed with litigation.

It is also curious to note that the government estimate for the Project was approximately 50% higher than UCI's bid. Perhaps the FHWA was aware of the true nature of the borrow source, which is clearly and demonstrably unsuitable for construction of stable foundations, embankments or roadbeds. Although your November 23, 2001, letter constitutes a denial of UCI's Notice that it has encountered a differing site condition, pursuant to the Disputes Clause FAR 52.233-1 UCI submits its claim under the Differing Site Condition FAR 52.236-2 and Changes Clause FAR 52.243-4.

With respect to your statement "Solely in an effort to work with you, FHWA added an optional compaction specification (roller pass method) in an effort to eliminate any difficulty that you had in determining densities and compacting the material. The roller pass method should take less time or effort than your hoe-pack method. In any event, your difficulty in achieving compaction is not due to an alleged differing site condition." UCI wholeheartedly disagrees. The Unilateral Change Order 001 was not "optional." FHWA directed UCI's construction means and methods, which was a change under the contract. Again, this letter constitutes our claim.

Based upon the differing site condition as well as the directed change in construction, UCI hereby asserts its claims to a contract time extension of 181 calendar days and change order in contract value in the amount of $641,950.15. This estimate to complete the Project is based upon UCI's experience on the Project and continuing in the FHWA's directed construction method. It also anticipates winter construction through

RECEIVED
NOV 30 2001
BY PROJECT ENGINEER

181

completion of the Project. This time and cost differential is due to the Project inefficiencies relating to continual placement and removal of material. UCI has been required, and if winter construction is mandated will be required, to place and compact material and upon start-up each day remove and replace the borrow material placed the previous day. Therefore, UCI is required to continually rework portions of the prior days completed work.

Alternatively, UCI estimates the cost to complete the Project would be $134,242.65 if construction is suspended during the winter and UCI remobilizes in the Spring. Work could be completed in 120 calendar days again utilizing FHWA's method specifications as set forth in Unilateral Changer Order No. 001 as directed.

There is a third alternative to completing the Project, which UCI believes would be perhaps the most beneficial. UCI previously discussed a Valve Engineering concept with FHWA onsite personnel but was discouraged. UCI submits that if construction is halted for the winter months and upon resuming construction, UCI is allowed to place its rejected crush material for borrow source material, the Project could be completed in 70 days and at an added cost of $83,923.70. Again, UCI previously raised this concept and was discouraged from exploring Valve Engineering. If this Valve Engineering approach is utilized, UCI submits a partnering meeting would be necessary to outline the procedures for construction.

If we are unable to come to a negotiated agreement for completing the Project, we will necessarily involve our counsel, all of our congressional representation, as well as the Idaho AGC. We understand that the experience on this Project is typical of the FHWA's method in administering contracts. Again thus far, the FHWA has not acted in good faith and UCI intends to pursue each and every legal avenue available. You have chosen to copy UCI's Bonding Company with your correspondence, which again evidences FHWA's animus. We are therefore copying our congressional representatives who we understand has been involved in other inquiries relating to FHWA's contract administration practices. It remains our intention, however, to attempt to negotiate a resolution to the problems experienced on the Project and facilitate completion. Under any scenario, however, UCI needs to be paid for its completed work.

Please advise as soon as possible regarding whether FHWA wishes to proceed with winter construction or demobilize based upon weather conditions. UCI requests a

RECEIVED
NOV 30 2001
BY PROJECT ENGINEER

182

meeting to discuss the completion of the Project and future administration of the Contract.

"I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor."

Sincerely,
UNIVERSAL CONSTRUCTION, INC.

Dick Standerfer

By Dick Standerfer, President

RECEIVED
NOV 30 2001
BY PROJECT ENGINEER

183