IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNIVERSAL CONSTRUCTION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 03-1502C |
| | ) | Consolidated With |
| v. | ) | No. 03-2370C |
| | ) | (Senior Judge Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff respectfully submits the following proposed findings of uncontroverted fact ("PFF").

1. Craig Sanders, the principle designer of the Camas Wildlife Refuge ("Camas") project for the Federal Highway Administration ("FHWA"), in describing the Camas project in the Design Narrative said:

> we are building a refuge road with little to no traffic. The words 'beat it to fit, paint it to match' was never more fitting.

Plaintiff's Appendix ("Pl. App.") p. 3.

2. The project required the finished road to be 4.2 meters wide, which required very narrow "sliver fills" to be constructed. Pl. App. p. 37.

3. The project was surrounded by a sensitive wildlife habitat, including extensive wetlands. As such, FHWA sought and received a wetlands discharge permit pursuant to section

404 of the Clean Water Act. FHWA's application and supporting materials were appended to the Camas project contract beginning on page H-1. Pl. App. pp. 7–32.

4. Due to the surrounding wetlands and the northerly climate the project could only be constructed during the low water months of late summer and fall. Pl. App. 97–98.

5. A key factor in the design of the Camas project was the use of the mandatory borrow areas as mitigation sites to compensate for the discharge of fill into the wetlands surrounding the wildlife viewing road. Pl. App. pp. 3. The borrow areas were not selected by FHWA for their geotechnical properties, rather, they were selected by the Camas Refuge manager for their suitability as mitigation sites. Pl. App. p. 88.

6. The provisions of the United States Department of Transportation Standard Specifications for Construction of Roads and Bridges on Federal Highway Projects, FP-96 ("FP-96") governed the Camas contract. Pl. App. p. 291.

7. FP-96 section 704.06 relating to unclassified borrow materials incorporated into highway projects was not superseded by any Special Contract Requirements ("SCR"). Pl. App. pp. 292–93. Section 704.06 mandates that unclassified borrow conforms to American Association of State Highway and Transportation Officials ("AASHTO") M 145 soil classifications of A-1, A-3, or A-2-4, with a maximum dimension no greater than 600mm. Pl. App. p. 90.

8. FHWA performed no geotechnical testing on the borrow areas despite knowing the borrow areas were selected for their suitability for mitigation sites rather than fill material. Pl. App. p. 3.

9. Materials Testing Inc. ("MTI") analyzed ten samples from the mandatory borrow areas, samples identified BP-1 (roadway sample) through BP-10. Pl. App. pp. 225–34. The FHWA lab in Vancouver, Washington analyzed five samples from the mandatory borrow areas. Pl. App. pp. 235–39.

10. The FHWA lab received the Camas project samples on November 7, 2001. Pl. App. pp. 235–39. Those samples were tested on November 19th and 20th. Id.

11. The mandatory borrow areas contained materials that were unacceptable under the contract. The mandatory borrow areas contained ASSHTO M 145 soil classifications A-6, A-4, A-3, A-2-4, and A-1. Pl. App. pp. 225–34.

12. Optimum moisture content, a key factor in material performance, differs by AASHTO M 145 soil classification. Pl. App. pp. 225–34.

13. The optimum moisture content of the samples analyzed by MTI varied from a low of 7.9 percent for an A-2-4 sample to a high of 19.5 percent for an A-6 sample. Pl. App. pp. 225–34.

14. The average optimum moisture content of the conforming soil samples taken by MTI was approximately 11.2 percent. Pl. App. pp. 225–34. The average optimum moisture content of the non-conforming soil samples was approximately 17.4 percent, or 50 percent higher than the conforming samples.

15. Thirty percent of the samples from the mandatory borrow areas analyzed by MTI did not conform to FP-96 section 704.06. Pl. App. pp. 225–34.

16. Forty percent of the samples form the mandatory borrow areas analyzed by FHWA did not conform to FP-96 section 704.06. Pl. App. pp. 235-239.

17. Desert Sage Contractors' ("Desert Sage"), the follow-on contractor on the Camas project, bid for unclassified borrow increased from $5.00 per cubic meter at the time of its initial bid to $20.00 per cubic meter upon reprocurement of the Camas contract. Pl. App. p. 78. Desert Sage's bid increase took into account the problems with the mandatory borrow material. Id.

18. Sandy loam is a distinct soil type defined to contain between 45 and 85 percent sand and 55 and 15 percent silt and clay; with no more than 50 percent silt and no greater than 20 percent clay. App. 24.

19. UCI was never compensated for any of the work it performed or material it supplied on the project. Pl. App. pp. 68–69, 72–75, 85

20. Desert Sage was permitted to deposit materials beyond the clear limits and into the wetlands. Pl. App. pp. 79–80.

21. Desert Sage encountered the same variable and unworkable material in the mandatory borrow areas. Pl. App. p. 78. Had it not been permitted to build the fill areas wider than specified and then cut back the excess, Desert Sage's performance would have been significantly delayed. Pl. App. p. 80.

Respectfully submitted,

s/ John Spencer Stewart
JOHN SPENCER STEWART
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Tel: (503) 221-0699
Fax: (503) 223-5706
Attorney for Plaintiff

November 4, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of November, 2005, a copy of the foregoing Plaintiff's Proposed Findings of Uncontroverted Fact was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ John Spencer Stewart
JOHN SPENCER STEWART
STEWART SOKOL & GRAY LLC
2300 SW First Avenue, Suite 200
Portland, Oregon 97201-5047
Tel: (503) 221-0699
Fax: (503) 223-5706

November 4, 2005